Argued December 2; affirmed December 16, 1941; rehearing denied
January 13, 1942

## MERRYMAN ET UX. v. COLONIAL REALTY CO. ET AL.

### (120 P. (2d) 230)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Henry E. Perkins*, of Klamath Falls (William B. Chaplin, of Oakland, California, on the brief), for appellants.

*A. E. Reames*, of Medford, for respondents.

BAILEY, J. The defendants, Colonial Realty Company, a corporation, and Mary K. Reynolds, have appealed from an order of the circuit court denying their motion to set aside a default order entered against them and a decree in favor of the plaintiffs, Harold C.

Merryman and Jane L. Merryman, his wife, and to permit the filing of an answer to the complaint.

The record before us discloses the following: On November 20, 1936, the plaintiffs instituted a suit in the circuit court for Klamath county against the above-named defendants and Mae K. Short, county clerk of that county, to have the defendant corporation declared trustee of certain described real property in Klamath county, to restrain the corporation and Mrs. Reynolds, the president and principal stockholder thereof, from transferring the title to the property involved, during the pendency of the suit, and to enjoin the county clerk from accepting and filing of record any paper or papers which might in any way affect the title of that property. The county clerk made no appearance in the proceeding and is not in any wise concerned in this appeal. In mentioning the defendants hereinafter, we are to be understood as referring only to the corporation and Mrs. Reynolds.

On February 8, 1937, a stipulation was filed in court, signed by A. E. Reames as attorney for the plaintiffs and Kavanaugh & Kavanaugh as attorneys for the defendants, allowing the defendants until February 15, 1937, to appear and plead in the cause. An order was entered in compliance with this stipulation. A further order was entered on February 15, granting to the defendants additional time in which to appear and plead.

A motion was filed on March 1, 1937, by J. H. Carnahan of Klamath Falls, signed by him as attorney for the defendants, to make the complaint more definite and certain. On March 17, 1937, the motion was denied. A further motion was filed by the defendants, by Mr. Carnahan as their attorney, on May 25 of that year, to strike certain parts of the complaint. This motion

is not shown by the record to have been passed upon by the court.

The defendants next, on June 24, 1937, filed a joint demurrer to the complaint. Thereafter, on February 7, 1938, they filed a motion asking to be allowed to withdraw that demurrer and file separate demurrers. This motion was granted, and on February 11, 1938, the defendants filed separate demurrers. All these papers were signed by Mr. Carnahan alone as attorney for the defendants.

Before any ruling was made on the demurrers, Mr. Carnahan on December 21, 1939, filed a written notice of his withdrawal as attorney for the defendants, with attached affidavit of service of copy thereof on the defendant Mary K. Reynolds and on the defendant Colonial Realty Company, a corporation, by service on Mary K. Reynolds as president of such corporation, in Sacramento county, California, December 18, 1939.

Nothing further appears to have occurred in the proceeding until May 29, 1940, at which time the defendants' demurrers were overruled and the defendants given twenty days in which to answer the complaint. On the date last mentioned a copy of the order overruling the demurrers was mailed to Messrs. Kavanaugh & Kavanaugh, of Portland, Oregon, according to proof of such mailing filed in the case.

No answer or further appearance was made by the defendants, and the plaintiffs by their attorney on July 15, 1940, filed a motion for an order of default against the defendants and to "fix a time for a hearing upon the merits of the cause herein, and for the making of findings of fact and conclusions of law, and the entry of a decree in plaintiffs' favor." On the same date the court set the time for hearing the motion for an

order of default for the hour of 2 P. M. on July 19, 1940, and the same time for hearing the cause on the merits. Copies of both the motion and the order were, on the day of filing the originals, July 15, 1940, mailed to Messrs. Kavanaugh & Kavanaugh at Portland. Proof of such mailing was filed in the cause.

The defendants made no appearance on the date set for hearing, July 19, 1940. A default was thereupon entered against them, and the court proceeded to hear evidence on the merits. On that day special findings of fact were made, and based thereon a decree was entered as prayed for in the complaint.

With the record in the state above indicated, the defendants on August 26, 1940, through their attorney, Henry E. Perkins, of Klamath Falls, filed a motion to set aside the order of default and the decree in the cause and to permit the defendants to file an answer:

"... for the reason that defendants did not receive notice of said decree until after it was entered, and because they have a defense which they desire and intend to interpose in this action, and further, because these defendants did not receive a copy of said order of default or decree before the same was entered, in accordance with rule No. 11, made and adopted by this court.

"This motion is based on the attached affidavit and the records and files of this court and cause and the proposed answer submitted with this motion."

Attached to the motion are the affidavit of Judge Kavanaugh, now deceased, and a proposed answer. The statements contained in Judge Kavanaugh's affidavit are substantially the following: That the defendant Mary K. Reynolds was the president, manager and principal owner of the capital stock of the defendant corporation; that he represented the defendants during

the month of November, 1936, and for some time thereafter; that on March 1, 1937, he received a letter from Mrs. Reynolds, sent from Klamath Falls, acknowledging receipt of his letter of February 27 and advising him that "for the present I wish to have Mr. J. H. Carnahan represent myself and my company entirely in his own way", also asking the affiant to request Mr. Reames to serve all papers on Mr. Carnahan; that on March 5, 1937, Mr. Reams wrote to him, stating that he had received a copy of a motion signed by Mr. Carnahan alone, and inquiring if the affiant was still in the case; and that he replied that he supposed he had been superseded by Mr. Carnahan and that he had no part in the pending motion; that Mr. Carnahan had telephoned and asked if it would be all right with him if he, Mr. Carnahan, should represent Mrs. Reynolds, and he had assented; that the affiant did not again hear from Mrs. Reynolds until he received a letter from her dated March 11, 1939, informing him that an amended answer was being prepared "in the Merryman litigation"; that on or about May 31, 1940, he received from Mr. Merryman a letter enclosing a copy of the order overruling the demurrers and granting the defendants twenty days in which to answer; that he advised Mr. Merryman that he had "long since discontinued service for Mrs. Reynolds and the company" and did not know where Mrs. Reynolds was residing but would call her attention to the matter if he could ascertain her address; that at the time he wrote to Mr. Merryman he did not know that Mr. Carnahan had withdrawn from the case, and assumed that a copy of the order had been served on Mr. Carnahan; that nothing further was done in the matter by the affiant until he received a letter from Mr. Merryman dated July 15, 1940, enclosing a copy of the motion for an

order of default and to have the matter set for hearing on the merits, together with a copy of an order setting July 19, 1940, as the time for such hearing; and that at the time of receiving that letter he was "out of touch with Mrs. Reynolds" but made every effort to locate her and finally notified her through an attorney in Sacramento, although this was not until after entry of the order of default.

The affidavit further states that on May 31, 1940, when the affiant received a copy of the order of default, he was convalescing from a long illness. Attached to the affidavit is the certificate of his physician to the effect that during the period between May 28, 1940, and July 19 of the same year Judge Kavanaugh would have been unable, because of illness, to attend to any legal matters at Klamath Falls.

The proposed answer tendered by the defendants with their motion to set aside the order of default and the decree was signed by Mr. Perkins and Mr. William B. Chaplin, of Oakland, California, as attorneys for the defendants, and was verified by Mary K. Reynolds as one of the defendants, in Alexander county, Virginia, on August 22, 1940. It consists chiefly of denials and admissions. The only affirmative allegation contained in it is that the defendant Colonial Realty Company "is the owner of said lands in fee simple and is entitled to the possession thereof."

The motion to set aside the default order and decree was, as hereinabove stated, filed on August 26, 1940. Thirty-eight days prior thereto, on July 19, 1940, the court had entered the order of default, special findings of fact and the decree. In its findings of fact the court set forth in detail the transaction between the plaintiffs and the defendant corporation, acting by and

through its president, Mrs. Reynolds. The findings of fact are in accord with the allegations of the complaint.

The complaint, after alleging the corporate capacity of the defendant company and that Mrs. Reynolds is the principal stockholder of the corporation, its president and in control of its affairs, sets forth the following: On October 20, 1936, the United States of America, in pursuance of the provisions of an act of Congress approved March 23, 1933, "providing for an exchange of lands between Colonial Realty Company (said defendant corporation) and the United States, and for other purposes," issued a patent to the defendant corporation for 1,190 acres of land situate in township 47 north of range 4 east of the Mount Diablo meridian, in Siskiyou county, California. The act referred to is Private No. 2—73d Congress, 48 Stat. L., part 2, page 1295. By the terms of a further act of Congress approved June 14, 1933 (Private No. 12—73d Congress, 48 Stat. L., part 2, page 1300), all construction charges that had been paid by owners of lands to be conveyed to the United States pursuant to the act of March 23, 1933, were required to be credited to the lands patented by the United States in accordance with such act, and "all payments of operation and maintenance charges with penalty and interest heretofore made on such of the lands to be conveyed as were not, in the determination of the Secretary of the Interior, during the period for which payment was made, susceptible of successful cultivation by reason of seepage, alkalinity, or other causes not within the control of the owners of such land", were required to "be allowed as credits on future construction, operation and maintenance charges on the lands retained or those to be patented by the United States pursuant to" the act of March 23, 1933.

In order to enable the defendant corporation to effect the exchange provided for by the act of March 23, 1933, "and with the knowledge of the United States of America," the plaintiffs as tenants by the entireties conveyed to the defendant corporation approximately 320 acres of land in Klamath county, Oregon, with the understanding between the plaintiffs and the defendant corporation that so much of the land so conveyed as was not accepted by the United States should be reconveyed by the defendant corporation to the plaintiffs. Of the lands thus conveyed by the plaintiffs to the defendant corporation, 206.8 acres were, along with other lands conveyed by the defendant corporation, accepted by the United States in exchange for the 1,190 acres of land in Siskiyou county, California, patented to the defendant corporation. The United States, however, did not accept the remainder of the lands conveyed by the plaintiffs to the defendant corporation, aggregating 110 acres.

The plaintiffs claim that in respect to the lands here involved they are entitled to the credits provided for by the two acts of Congress above mentioned.

The complaint further alleges that the purpose of the trust for which the lands were by them conveyed to the defendant corporation has been performed; that the corporation had undertaken to reconvey to the plaintiffs the 110 acres of land described in the complaint, but has failed to do so; that the defendant Mary K. Reynolds, "acting both for herself and the defendant company, evades these plaintiffs, avoids making any arrangements or contracts with these plaintiffs either for the reconveyance to them of their lands or for other protection of the interests of these plaintiffs, and that unless restrained will dispose of said lands to the irreparable damage to these plaintiffs."

The prayer of the complaint is that the plaintiffs be decreed to be the owners of the 110 acres of land described in the complaint and that the defendant corporation be decreed to hold the title to such land in trust for the plaintiffs; and that the defendants be restrained, during the pendency of the suit, "from in any way alienating the title to said property or in any other way interfering with said property."

The defendants knew, on December 18, 1939, that Mr. Carnahan had, by written notice served on them, ceased to act as their attorney and withdrawn from the case. They had, a long time prior to that date, given the law firm of Kavanaugh & Kavanaugh to understand that it was not representing them in this litigation and that the defendants had turned the entire matter over to Mr. Carnahan. At the time of Mr. Carnahan's withdrawal as attorney there were pending before the court the demurrers of the defendants to the complaint. No steps were thereafter taken by the defendants, or either of them, to have other counsel substituted. Nor did they notify the plaintiffs or the plaintiffs' attorney of the mail address of either of the defendants. Even Judge Kavanaugh, who formerly had been the defendants' attorney, did not know where they could be located. Although the firm of Kavanaugh & Kavanaugh was not actively assisting in the litigation, it had filed no written notice of withdrawal from the case.

When the demurrers were overruled the plaintiffs did everything they could to get notice to the defendants of the action taken by the court. They had been informed that Mr. Carnahan was no longer attorney for the defendants, and as they did not know where to reach the defendants by mail they communicated with the Portland attorneys who had first appeared for the

defendants. The order overruling the demurrers was entered May 29, 1940, and gave the defendants twenty days in which to answer. It was not, however, until July 15, following, that the plaintiffs took any further action in the cause, which was the filing on that day of a motion for default and for a hearing on the merits.

Section 1-1007, O. C. L. A., provides that the court may, "in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

The defendants make no showing in this case that the default order and decree were taken against them through their mistake, inadvertence, surprise or excusable neglect. The grounds assigned by them for asking to have the default order and decree set aside are (1) that the defendants did not receive notice of the decree until after it was entered; (2) that the defendants did not receive, as provided by rule No. 11 of the circuit court for Klamath county, a copy of the order of default or the decree before the same were entered; and (3) that the defendants have a defense "which they desire and intend to interpose in this action."

The first contention urged by the defendants is that they were not represented in court by any attorney at the time the court overruled their demurrers to the complaint, and that therefore a copy of the proposed order of default should have been served on them prior to its entry by the court. Their second contention is that no copy of the proposed order of default was served upon the law firm of Kavanaugh & Kavanaugh prior to the entry of the order.

Rule 11 of the circuit court for Klamath county is as follows:

"Any attorney intending to make a motion for a default order shall first serve on the adverse party, if one has appeared, or is known in the case, a copy of the form of the order he proposes to ask for."

■ The apparent purpose of this rule is to prevent the entering of default orders through inadvertence, mistake, surprise or excusable neglect of a party who has appeared in the case either personally or by an attorney, or of an attorney who is known to represent the litigants but who has not appeared in the case. It frequently happens that after a demurrer has been overruled and during negotiations by attorneys who have appeared for the respective parties, for a settlement or compromise of the controversy, a default order is entered, as in *McAuliffe v. McAuliffe*, 136 Or. 168, 298 P. 239, wherein this same rule of court was involved.

Other instances occur in which attorneys representing defendants have, before appearing in the case, taken up with attorneys for the plaintiffs the question of additional time in which to appear, or have negotiated for a settlement of the matter in dispute. In such cases, when the party against whom the default order has been taken moves to set aside the order there is always present the question of what was the understanding between counsel for the respective parties; and in order to avoid difficulties thus occasioned, the rule here under consideration undoubtedly was adopted.

In the case at bar the defendants do not urge, as a reason for setting aside the default order and decree, that they did not have knowledge of the order of the

circuit court overruling their demurrers and granting them twenty days in which to answer. According to the argument they advance, they had no attorney of record representing them after the withdrawal of Mr. Carnahan in December, 1939, until they moved to set aside the default order. Their contention is that a copy of the default order and of the decree should have been served upon the defendants personally. Yet they do not show that the plaintiffs knew where the defendants or either of them could be found for notification of the court's action.

In our opinion, the order of default and the decree entered thereon should not be set aside on the ground that the plaintiffs did not serve copies of the proposed forms thereof upon the defendants personally before the default order and the decree were entered. We do not believe that the rule of court to which reference has been made should be construed as making it a condition precedent to the entering of a default order that the plaintiffs serve the defendants with a copy of the order, when the attorneys representing the defendants have withdrawn from the case and the defendants have had ample time in which to substitute other attorneys, yet have failed to do so, and have further failed to inform the plaintiffs of their address. Even if the facts in the case warranted us in holding that Messrs. Kavanaugh & Kavanaugh were attorneys for the defendants at the time the default order was taken, the failure to serve them with a form of the proposed order of default would not be material, inasmuch as they were served with a copy of the order overruling the demurrers and setting the time for the defendants to answer, likewise with a copy of the motion for default and setting time for hearing on the merits.

The defendants were neglectful of their own interest, if they did not keep advised of the state of the proceedings in court. At the time Mr. Carnahan resigned as counsel for them their demurrers had been argued and submitted to the court on briefs. The defendants must and should have known the state of the record at that time.

■■ The court is authorized, in its discretion and upon such terms as may be just, to relieve a party from a judgment taken against him under certain conditions: § 1-1007, *supra*. The question of whether the judgment should be set aside in the instant case was a matter within the discretion of the court, and the court's action in denying the motion therefor will not be disturbed unless there was abuse of that discretion: *Carlson v. Bankers Discount Corporation*, 107 Or. 686, 215 P. 986, and authorities therein cited.

In our opinion, there was no abuse of discretion on the part of the circuit court in refusing to set aside the default order and decree. The decree appealed from is accordingly affirmed.